# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:10-CV-41-GCM

| | |
|---|---|
| ISS RESEARCH, LLC )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>FEDERAL INSURANCE COMPANY, )<br>)<br>    Defendant. ) | <u>ORDER</u> |

THIS MATTER is before the Court upon Cross-Motions for Partial Summary Judgment. For the reasons stated below, Defendant's Motion is GRANTED, and Plaintiff's Motion is DENIED.

## BACKGROUND

Plaintiff ISS Research, LLC is a maker of sports nutrition products that was insured under commercial liability insurance policies issued by the Defendant. The dispute here results from a lawsuit filed against Plaintiff in California in 2008, based on Plaintiff's allegedly unauthorized use of an individual's photograph. Plaintiff seeks a declaratory judgment that Defendant breached its contract with Plaintiff by wrongfully refusing to defend or indemnify the Plaintiff in that California lawsuit. Plaintiff's Complaint also includes claims under the North Carolina Unfair and Deceptive Trade Practices Act and for Bad Faith. (Pl. Cplt. 4-8). However, the issue before the Court in the parties' cross-motions for summary judgment is the Plaintiff's

request for a declaratory judgment that Defendant breached the contract by refusing to defend or indemnify the Plaintiff in the underlying suit.

The underlying suit was based on Plaintiff's use of a photograph of an ex-football player and model, Paul Green, in a magazine advertisement for Plaintiff's nutrition bars. Green filed suit against Plaintiff and an individual photographer, Jason Ellis. (Pl. Ex. F). The Complaint alleged that Green had hired Ellis to take photographs so that he could use them to further his modeling career, and he intended to use them in his modeling portfolio. (Pl. Ex.F. 2) Green alleged that Ellis "understood that [Green] was seeking to make money from his image and likeness." (Id. at 3). Green claimed that he paid Ellis for the shoot and at no time did they discuss the possibility of "giving Ellis the right to use or exploit [Green's] likeness." (Id.). He also asserted that when he went to pick up the photographs, Ellis provided him with a pre-printed "Model Release" form that he signed. However, Green maintained that he would not have signed it if he had "understood that the 'Model Release' purported to give Ellis and his assigns the right to use or exploit [Green's] likeness without compensation to him. This is because [Green] intended to be compensated for such uses. After all, the entire purpose behind taking the photographs was so that [Green] could make money off of his image and likeness." (Id. at 5). Green alleged that he "routinely charges in excess of six figures for the use of his likeness in advertising." (Id. at 2).

Green filed suit after allegedly discovering that Plaintiff was using a photograph from that shoot in a national advertisement without his consent or authorization. (Id. at 6). The Complaint against Plaintiff contained claims for common law misappropriation of likeness, statutory misappropriation of likeness under California Civil Code §3344, and unjust

enrichment. Defendant refused to defend or indemnify Plaintiff in the lawsuit, and Plaintiff institutes this action to recover for costs related to the lawsuit.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Id. at 248. This evidence must be properly authenticated pursuant to Rule 56(e). Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. Celotex, 477 U.S. at 322-23.

## DISCUSSION

The insurance contract at issue in this case imposes a duty on the insurer to indemnify the insured for any judgments and to defend the insured against any claims that fall within the language of the policy. However, "an insurer's duty to defend is broader than its duty to pay damages." Lozada v. Phoenix Ins. Co., 237 F.Supp.2d 664, 669 (M.D.N.C. 2003) (citing Estate of Teel by Naddeo v. Darby, 500 S.E.2d 759 (1998)). This duty to defend is "ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts

ultimately determined at trial." Id. at 669 (citing Waste Management of the Carolinas, Inc. v. Peerless Insurance Co., 315 N.C. 688, 690, 340 S.E.2d 374, 377 (1986), *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Id at 670 (citing Strickland v. Hughes, 273 N.C. 481, 487, 160 S.E.2d 313,318 (1968)).

North Carolina courts employ a "comparison test" to determine whether an insurer has a duty to defend in a lawsuit. Waste Management of the Carolinas at 378. Applying this test, a Court compares the allegations of the Complaint with the provisions of the insurance policy to determine whether the facts as alleged are covered or excluded. *Id*. at 378. "The interpretation of the language used in an insurance policy is a question of law that is governed by well-established rules of construction." Allstate Ins. Co. v. Runyon Chatterton, 135 N.C. App. 92, 95, 518 S.E.2d 814, 816 (1999). As long as the policy language is "clear and unambiguous, the Court must enforce the contract as written." Id. at 95. However, if the language is ambiguous or susceptible to more than one interpretation, the policy "must be construed in favor of coverage and against the insurer." Id. at 95. The language is not ambiguous merely because the parties "contend for differing meanings to be given to the language." Id. at 95. The court is to give the words their "plain and ordinary meaning." Allstate Insurance Co. v. Bates, 185 F.Supp.2d 607, 610 (E.D.N.C. 2000). And while it is the burden of the insured to establish that a loss comes within the scope of the policy's coverage, it is the burden of the insurer to show "that an exclusion is applicable." Id. at 610. Should the language indicate that the policy "creates a clear exclusion," then that language controls. Id. at 610.

A. The Insurance Policies

Defendant issued Plaintiff a general liability insurance policy and a commercial excess and umbrella insurance policy. (Pl. Ex. B & C). The parties do not dispute that the insurance was in effect during the relevant period, but disagree as to whether the Green's Complaint falls within the policies' coverage for personal injury; and, the parties also dispute whether an "Intellectual Property" exclusion applies to bar coverage. The policies include coverage for advertising and personal injury liability in the Insuring Agreement as follows:

> Subject to all the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability:
>
> Imposed by law; or
>
> Assumed in an insured contract;
>
> for advertising injury or personal injury to which this coverage applies.

The policies define "personal injury," in relevant part, as:

> Personal injury means injury, other than bodily injury, property damage or advertising injury, caused by an offense of:
>
> D.    electronic, oral, written or other publication of material that…
>
> 2. violates a person's right of privacy…

The policies also include an exclusion section entitled "Intellectual Property Laws or Rights," which states:

> This insurance does not apply to any actual or alleged bodily injury, property damage, advertising injury or personal injury arising out of, giving rise to or in any way related to any actual or alleged:

> > assertion; or
>
> > infringement or violation;
>
> by any person or organization (including any insured) of any intellectual property law or right, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

"Intellectual property laws or rights" is defined in the policies as:

> > certification mark, copyright, patent or trademark (including collective or service marks);
>
> > right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;
>
> > *other right to, or judicial or statutory law recognizing an interest in, any* expression, idea, *likeness*, name, slogan, style of doing business, symbol, title trade dress, or other intellectual property; or
>
> > other judicial or statutory law concerning piracy, unfair competition or other similar practices.

(Plaintiff's Exhibits B & C) (emphasis added). Defendant asserts that the Intellectual Property exclusion bars coverage because Mr. Green's claim was based on the misappropriation of his likeness. Defendant also argues that Green's Complaint alleged violations of his right to publicity and did not fall within the policies' coverage of liability for violations of a person's right to privacy.

B. The Applicability of the Exclusion

Green's Complaint alleges that "Defendant ISS never contacted Plaintiff or obtained a release from Plaintiff or his consent to use Plaintiff's likeness for its advertisements." (Pl. Ex. F ¶17). Although, the Green Complaint repeatedly refers to the photographs used in the advertisement as a "likeness" and the Intellectual Property Exclusion specifically bars coverage for damages related to violations of property rights in a "likeness," Plaintiff argue that because the term "likeness" is not defined in the policies, it is ambiguous and should be construed against the Defendant as not to include the photograph at issue in this case.

Plaintiff contends that the "plain and ordinary" meaning of likeness does not include a photograph. In support of this contention, Plaintiff points to two cases from the Ninth Circuit, in which Courts distinguished between a photograph and a likeness under California Civil Code §3344. That statute applies to the unauthorized use of a person's "name, voice, signature, photograph, or likeness…" Cal. Civ. Code §3344(a). For the purpose of the statue, it is clear that California law makes a distinction between a photograph and a likeness. However, other courts, including courts in North Carolina, consider a photograph to be a type of likeness. Flake v. Greensboro News Co., 212 N.C. 780, 195 S.E. 55 (N.C. 1938) (holding "a likeness of the plaintiff was used" in case in which photograph was published in newspaper), Barr v. Southern Bell Tel. & Tel. Co., 185 S.E.2d 714, 13 N.C. App. 388 (1972) (stating that photograph published in paper was "likeness of someone other than plaintiff."), Falwell v. Flynt, 797 F.2d 1270 (4th Cir. 1986) (finding district court properly dismissed invasion of privacy claim against Defendant for use of Plaintiff's photograph in a parody although parody used Plaintiff's likeness- it was not for purposes of trade), *rev'd on other grounds sub nom*. Hustler Magazine v. Falwell, 485 U.S. 46 (1988). Stanley v. General Media Communications, Inc., 149 F. Supp. 2d

(W.D. Ark. 2001) (finding photograph was likeness but Plaintiff did not state appropriation claim because there was no commercial use), Burck v. Mars, Inc., 571 F.Supp.2d 446 (S.D.N.Y. 2008) (stating that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture'" under New York statute).  In addition, a decision from the Western District of Pennsylvania addressed a similar commercial liability policy that provided coverage for "oral or written publication of material that appropriates a person's likeness." Whole Enchilada, Inc. v. Travelers Prop. Cas. Co., 581 F.Supp.2d 677, 698 (W.D. Pa. 2008).  In that case, the Court held that "the term 'appropriation of a person's likeness' is unambiguous… [t]he plain meaning of 'likeness' is 'appearance or semblance'" Id. at 289.  This Court, therefore, finds that the term "likeness" is unambiguous and its plain and ordinary meaning is reasonably understood to include a photograph.

Applying the North Carolina "comparison test" here, the sole factual basis for the Green Complaint is the alleged "misappropriation of his likeness" utilized for commercial gain. (Pl. Ex. F ¶27-41).  Green asserted his legally protectable right to control the commercial exploitation of his valuable likeness.  California law, under which the Plaintiff herein was sued, recognizes that Green's right to control the commercial use of his likeness is an intellectual property right.  The California Supreme Court in Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal.4th 387 (2001), stated that "[t]he right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility."  25 Cal.4th at 399.  Moreover, the United States Supreme Court has held that "the State's interest in permitting a 'right of publicity' is in protecting the proprietary interest of the individual" and is "closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors." Zacchini v. Scripp-Howard Broadcasting Co., 433 U.S. 562, 573

(1977). The Intellectual Property exclusion applies to alleged violations of "judicial or statutory law recognizing an interest in, any… likeness…" (Pl. Ex. B & C). The policies clearly exclude coverage for damages related to the misappropriation of a likeness. Therefore, Defendant had no obligation to defend or indemnify Plaintiff in the California lawsuit brought by Mr. Green.[1]

## CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is hereby GRANTED; and Plaintiff's Motion for Partial Summary Judgment is hereby DENIED.

Signed: November 18, 2010

Graham C. Mullen
United States District Judge

---

[1] The exclusion is applicable, thus there is no need to reach the question of whether the Green lawsuit falls within the "right to privacy" language in the contract.